NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 190440-U

NO. 4-19-0440

Rule 23 filed February 27, 2020

Modified upon denial of
Rehearing April 21, 2020

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| CAROLYN K. COMPANY, f/k/a | ) | Adams County |
| Carolyn K. Kimber, | ) | No. 14D197 |
| Petitioner-Appellee, | ) | |
| and | ) | Honorable |
| SCOTT R. KIMBER, | ) | Holly J. Henze, |
| Respondent-Appellant. | ) | Judge Presiding. |
| | ) | |

JUSTICE KNECHT delivered the judgment of the court.
Justices Cavanagh and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) The trial court did not commit reversible error by not imputing income to
petitioner in determining respondent's child-support obligation.

(2) The trial court did not err in deviating from the statutory child-support
guidelines.

(3) The trial court did not err in denying respondent's request to apply the
modification of child support retroactively to the date petitioner received notice of
his petition to modify child support.

¶ 2    In June 2019, the trial court entered an order modifying the amount of child

support paid by respondent, Scott R. Kimber, to petitioner, Carolyn K. Company. In setting child

support, the trial court deviated upward from statutory guidelines and refused to apply the

modification retroactively. Respondent appeals, arguing the court erred by (1) deviating from the

statutory guidelines to increase the amount of child support based primarily on his ability to pay, (2) failing to impute income to petitioner who was underemployed, and (3) refusing to make the child-support modification retroactive to the date his petition was filed. We affirm.

¶ 3                                 I. BACKGROUND

¶ 4        The parties were married in May 1995. Four children were born to the marriage: Katelyn Kimber (born August 24, 1997), Madelyn Kimber (born May 20, 2000), Ca. K. (born May 25, 2002), and Cl. K. (born July 10, 2004). The marriage was dissolved in November 2014. Pursuant to the judgment of dissolution, physical custody of the children was placed with petitioner. For child support, respondent was ordered to pay $6000 per month in addition to 40% of the net of any bonuses he received through his employment as a physician with and shareholder of Quincy Medical Group.

¶ 5        In November 2015, the parties entered an agreed order modifying respondent's child-support obligations. According to the order, Katelyn had reached the age of majority and resided with respondent. The parties agreed to reduce respondent's child-support obligation to 32% of respondent's net income, thereby reducing his monthly payment from $6000 to $5275. The percentage of respondent's net bonuses was also reduced to 32%.

¶ 6        In July 2018, after the parties' second child, Madelyn, reached the age of majority, respondent petitioned for modification of child support. At the May 2019 hearing on the petition, both parties testified.

¶ 7        Petitioner testified she and her husband, Joseph Company, started and owned a business called Wellness Data Solutions, a business focusing on corporate wellness. Wellness Data Solutions developed a healthcare risk index to be used to reduce healthcare expenses for

companies by improving the health of their employees. The business had been operating for approximately two years. Acknowledging "child support *** completely ends in three years," petitioner stated she was working as hard as she could on her business. The money Wellness Data Solutions earned was put back into the company "to pay off the development of [its] platform." Wellness Data Solutions had won an award for innovation and health care. After Wellness Data Solutions experienced a surplus of $5000 in 2018, petitioner and Joseph shared the profit. Petitioner's income in 2018 was $2500. In December 2016, petitioner and Joseph acquired a $100,000 home-equity loan to finance their business. Wellness Data Solutions made the payments on this loan. Before this loan, petitioner had no debt on the home.

¶ 8 Petitioner had no other employment since the divorce. During the marriage, petitioner worked for Quincy Medical Group for eight years. The bulk of this time, petitioner worked part-time, starting as a personal trainer. Petitioner was later promoted to the full-time role of wellness coordinator. In that role, petitioner had a gross monthly salary of $5800. She, however, worked in that position for less than a year, leaving her job after she and respondent decided she should be home with the children. After respondent filed his petition to modify child support, petitioner began looking for employment. She testified the only positions offered in the area were "all entry[-]level positions." Petitioner's master's degree in counseling psychology and her work experience from 25 years earlier were irrelevant. There were no wellness-coordinator jobs in Bloomington-Normal at the time. Petitioner had applied for positions at Chestnut, a mental-health facility in Bloomington, Illinois, but had not been offered a position. Petitioner did not know the salaries of the Chestnut positions. She had, however, seen advertisements for entry-level social-services positions and believed she could earn $30,000 to $40,000.

¶ 9 Petitioner maintained her own savings and checking accounts. Petitioner had around $29,000 in the savings account. That amount had increased from the $16,500 reported on her discovery response because she had "been saving everything" since respondent filed for modification. Regarding the checking account, it contained funds from child-support payments as well as the $757 per month loan payment. The $757 payment was part of the property settlement in the divorce. Petitioner had between $4000 and $5000 in her checking account.

¶ 10 In November 2014, petitioner and Joseph purchased the home in which they resided with the children. Joseph moved into the home approximately two months after the divorce. At the time of the hearing, Madelyn also resided with petitioner while attending Illinois State University (ISU). Petitioner did not take funds from Madelyn's college fund for Madelyn's food and living expenses but paid for them with her own funds. Petitioner stated the anticipated expenses for Madelyn's college exceeded the amount in her college account. Joseph contributed to the monthly expenses. Petitioner paid two-thirds of the expenses, while Joseph paid one-third. Joseph had his own refrigerator in the garage. He paid for his own groceries and other expenses. In 2017, Joseph earned almost $70,000. In 2018, he made $37,000 in gross receipts or sales with his personal-training business. In 2018, Joseph's net earnings were $5714.

¶ 11 Petitioner testified "we live comfortably now." The home was valued at $253,000. The family was surrounded by schools that were challenging. The children participated in whatever activities they wanted to do. If the child support was reduced to $1700, as respondent proposed, petitioner believed they would have to move. She could not support the lifestyle they currently enjoyed. She also testified she would be unable to repay any overpayments. Petitioner testified "[e]ven just to be in the school district is $500 a month in taxes." The Unit 5 School

District, ranked second in the state, allowed her daughter to get into ISU and her sons to flourish.

¶ 12     Petitioner was scared about the outcome of the case: "I can't support the kids and the lifestyle that we have on that amount of child support. I understand that in three years, I have to be financially independent and on my own, and I am busting it with [Wellness Data Solutions] as much as I can right now, but if I have to keep Wellness Data Solutions, parent full time and work full time, it's going to be a rough road." Petitioner worked at least 40 hours a week for Wellness Data Solutions. When the children were in Quincy with respondent, she worked through the weekends. Petitioner worked from home so she could be available to her children.

¶ 13     Since respondent filed his motion, to save money, the family was eating at home more. They no longer rented a place for a vacation at the lake but stayed with her parents instead. She carefully watched her expenses. The children had not yet given up extracurriculars. Before the petition to modify was filed, they were spending $400 per month on entertainment, dining out, and hobbies. Since then, they have cut that expense to approximately $100 per month. According to petitioner, respondent had over $12,000 per month available to him after meeting his child-support and other obligations.

¶ 14     Petitioner testified she was asking the trial court to leave the child support set at $5275 per month. She was willing to forgo her percentage of the bonuses respondent received.

¶ 15     Respondent testified he resided in Quincy, Illinois. Katelyn was 21 years old, married, and living in St. Louis, Missouri. Ca. K. was 17 and Cl. K. was 14. Respondent paid $200 per month for car insurance for Ca. K. He provided health insurance for the children through his employer. Respondent also paid 90% of the medical costs not covered by insurance. The children spent every other weekend and five weeks during the summer with respondent. The

parents split the holidays. Respondent had the children every spring break and all holiday weekends.

¶ 16    Respondent was employed with Quincy Medical Group, where he had worked as a physician for 14 years. Respondent was a shareholder of the group and earned a guaranteed annual salary of $300,000. Respondent testified in 2016 and 2017, the State of Illinois fell $9 million behind in what they owed Quincy Medical Group. The State of Illinois began paying those debts in late 2017 and 2018. Thus, income that he would have had in 2015 and 2016 was not collected until 2017 and 2018, thus inflating those numbers. In 2017, respondent's actual gross income was $383,034.93. In 2018, his gross income was $551,223. As of March 31, 2019, respondent's gross income for the year was $108,481. This included a bonus of $7388, which was 50% of what it was the previous year. Due to his nurse practitioner leaving the group, respondent expected to lose $6000 each month from income he received supervising her.

¶ 17    In 2018, respondent paid $99,698.36 in child support. This included the monthly obligation as well as the percentage of bonuses.

¶ 18    Respondent testified the family enjoyed a comfortable lifestyle. Except for the time in 2011 when petitioner worked full-time, petitioner stayed home with the children from 1998 until their divorce. The parties agreed to this arrangement. The value of respondent's home, which was the marital home, was $440,000. The home had a pool. The children participated in extracurricular activities, and the family went on vacations, including "a couple of cruises" and trips to Mexico and Minnesota. Respondent also provided vehicles for the children.

¶ 19    According to respondent, petitioner was a world-class triathlete. During the marriage, petitioner was heavily involved in athletics and personal training. On this activity, she

spent approximately 40 hours per week. In 2012, petitioner went to Spain for 11 days for triathlon activities. She also went to the London Olympics as a spectator. Petitioner participated in three Ironman races in 2013 and 2014. During these times, respondent was home with the children. Petitioner did a lot of her training during the school and work week. Weekends were often consumed with training and being away at competitions. In 2009 or 2010, they did not take a family vacation because of petitioner's training commitments. Respondent would take the children to St. Louis for entertainment while petitioner "was riding 100 miles on her bike for over a ten to 12-hour stretch."

¶ 20    Respondent testified petitioner used money from the property settlement from the divorce to purchase and furnish the home she resided in. The home was a two-level, single family home in "a very middle[-]class neighborhood." Respondent believed the homes were valued in the range of $250,000 to $300,000 and the schools were within walking distance. Each of the parties' three children had a bedroom. Joseph's two daughters, who resided in Michigan, shared a bedroom when they visited. Respondent believed his children were "very happy and comfortable and, you know, fully paid for." In 2015, petitioner and Joseph took the children to Mexico over Christmas vacation. The other vacations were, he believed, to the Lake of the Ozarks.

¶ 21    In June 2019, the trial court entered its order on respondent's Petition to Modify Child Support and his amended petition to modify child support. The court made the following findings and orders:

> "1. Pursuant to an Agreed Order entered on November 5,
> 2015, the Respondent's child[-]support obligation was reduced

from $6,000 per month plus 40% of his net bonuses to $5,[275] per month plus 32% of his net bonuses. Since that Agreed Order was entered, another one of the parties' children has reached the age of 18, and the Respondent is seeking a reduction in his support obligation based on those changed circumstances and under the July 2017 statutory guidelines.

2. The Petitioner is self-employed and earned $2,500 in 2018. The Respondent is a shareholder physician earning a base salary plus per diems and bonuses, earning an average of $409,511 per year since 2016. Based on the attached Illinois Child Support Guideline Calculation, the Respondent's child[-]support obligation would be reduced to $3,050 per month under the July 2017 statutory guidelines.

3. The Respondent has requested that income be imputed to the Petitioner. The Court declines to do so for the reason that it was the parties' intent that the Petitioner not work outside the home to shoulder the primary responsibility for raising the parties' four children. It was by agreement for that very purpose that the Petitioner quit her job at Quincy Medical Group where she was earning a substantial income.

4. The Petitioner asks that the Court deviate upward from the Illinois Child Support Guidelines, testifying that she needs the

Respondent's current child[-]support obligation to remain the same in order to maintain the standard of living the children enjoyed during the marriage.

5. The Petitioner waived any right to maintenance at the time the parties' marriage was dissolved. She now states that she did this because the child support set at that time—when the parties' children were still all minors—was sufficient to 'support the family' and thus this amount is necessary to continue to maintain the same standard of living. The Court does not find the Petitioner's testimony in that regard to be credible. Evidence was presented that the Petitioner very soon following dissolution moved to Bloomington, Illinois[,] to cohabit with her now husband. Thus, the Court will not consider this in determining whether or not an upward deviation is warranted.

6. In 2018, the Respondent paid child support to the Petitioner in the amount of $99,698 or $8,308 per month. He also pays the car insurance for one of the minor children, provides the children with health insurance and pays 90% of all medical expenses not covered by insurance. If the Court were to follow the Illinois Child Support Guidelines, the amount of child support would be substantially reduced. The Petitioner stated she would no longer be able to support the children with the lifestyle they were

accustomed to during the marriage and that she has been able to continue to do. She testified she would need at least $5,000 per month to maintain the children's lifestyle.

7. The Petitioner testified that the family had tightened its belt since the Respondent filed the initial petition in July of 2018. When asked in what areas the children had done without, she was only able to say that they were eating out less. The Petitioner has provided a Financial Affidavit and an exhibit entitled[,] 'Carrie Company Child Support Budget[,]' which breaks down where the child[-]support funds are spent, including $550 per month budgeted for savings. The Petitioner's bank records show that she has approximately $30,000 in her savings account, the vast majority of which came from child support paid to her by the Respondent. From the time discovery ensued after the Petition to Modify was filed in July of 2018, she increased the balance in her personal savings account by approximately $14,000.

8. The Court finds that the Petitioner is receiving a windfall based on the current amount of support, which was calculated to support three minor children under the pre-July 2017 statutory guideline. According to the Petitioner's own budget, she is essentially supporting her entire family unit, which includes her current husband, two step-children who visit on occasion, a child

of the parties who is over the age of 18, and the parties' two minor children. With regard to the Petitioner's business, she stated, 'I am working as hard as I can because the child support ends in three years.' According to her testimony, she pays two-thirds of the family's expenses with a one-third contribution from her husband. According to the Petitioner's joint tax return, her current husband does not currently earn a sufficient income to make that contribution.

9. With regard to the Petitioner's Financial Affidavit, a home[-]equity[-]loan payment in the amount of $500 per month is paid by the business jointly owned by the Petitioner and her husband, which serves to reduce her reported expenses. Also, the Court has deducted a reported $50 and $200 for 'voluntary trade or professional association dues' and 'professional fees,' respectively, as these fees should also be paid by the parties' business, not out of the Petitioner's personal budget. These deductions from the Petitioner's monthly family[-]expense budget serve to reduce the family's monthly expenses to $4,883. With regard to the Petitioner's 'Child Support Budget,' the Petitioner spends $4,720 per month on family expenses and saves $550. It would appear that the child support paid to the petitioner out of the Respondent's bonuses is not necessary for the support of the Petitioner's family

unit and is placed into the Petitioner's savings account.

10. According to 750 ILCS 5/505(a)(3.4), there is a rebuttable presumption that the statutory guidelines should be utilized to establish or modify child support. The Court finds that to apply the guidelines in this case is not appropriate nor in the best interests of the two minor children. The financial resources of the Respondent are more than sufficient to meet his own needs while supporting the children at the standard of living they would have enjoyed had the marriage not been dissolved. As such, the Court finds that an upward deviation from the statutory guidelines is appropriate.

11. That having been said, the current support order is well in excess of the amount necessary to support the standard of living to which the two minor children have become accustomed. The result has been a windfall to the Petitioner which allows her to support the entire family unit as well as place substantial amounts into her own savings account. The Respondent's child[-]support obligation shall be reduced to $4,700 per month, with no provision for any additional amounts to be paid out of the Respondent's bonuses, as the bonuses for the past three years have been calculated into the Respondent's average yearly income.

12. The Court has discretion as to whether or not a

modification in child support should be made retroactively. Based on the Respondent's Financial Affidavit, the Court finds that he has in excess of $12,000 per month after meeting his own financial obligations. The Court also finds that it would place a financial hardship on the Petitioner and negatively affect the standard of living the children have enjoyed if the reduction in child support was made retroactively. The Respondent's request for the reduction in children support to be retroactive to the date he filed his Petition is denied."

¶ 22    This appeal followed.

¶ 23                            II. ANALYSIS

¶ 24              A. The Decision Not to Impute Income to Petitioner

¶ 25    Respondent first contends the trial court's computation of child support is erroneous in that the court failed to impute income to petitioner. Respondent maintains section 505(a)(3.2) of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/505(a)(3.2) (West 2018)) requires consideration of imputed income to plaintiff as she is voluntarily underemployed and evading her obligation to support her children. Respondent further emphasizes petitioner had not looked for employment before July 2018 and admitted she could earn $30,000 to $40,000 a year in a social-service position.

¶ 26    Section 505(a)(1.5) of the Dissolution Act sets forth the steps necessary for the computation of the basic child-support obligation:

    "(A) determine each parent's monthly net income;

- 13 -

(B) add the parents' monthly net incomes together to determine the combined monthly net income of the parents;

(C) select the corresponding appropriate amount from the schedule of basic child[-]support obligations based on the parties' combined monthly net income and number of children of the parties; and

(D) calculate each parent's percentage share of the basic child[-]support obligation." 750 ILCS 5/505(a)(1.5) (West 2018).

¶ 27    Section 505(a)(3.2) of the Dissolution Act mandates the calculation of the potential income of a voluntarily or underemployed parent provides considerations when a parent is "voluntarily unemployed or underemployed":

"If a parent is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income. A determination of potential income shall be made by determining employment potential and probable earnings level based on the obligor's work history, occupational qualifications, prevailing job opportunities, the ownership by a parent of a substantial non-income producing asset, and earnings levels in the community." 750 ILCS 5/505(a)(3.2) (West 2018).

¶ 28    In this case, the trial court explicitly determined it would not impute an income to petitioner in calculating the basic child-support obligation. The court reasoned it would not do so because petitioner's voluntary underemployment was the result of an agreement by both

- 14 -

respondent and petitioner that petitioner not work outside the home. The court then used the $2500 figure as petitioner's net salary in the computation of basic child-support obligations and found $3050 to be the appropriate figure under the January 2017 guidelines.

¶ 29      A plain reading of the statute suggests the trial court should have imputed some income to petitioner. The use of the term "shall" throughout section 505(a)(3.2) indicates consideration of voluntary underemployment in the calculation of the basic child-support obligation is mandatory. See 750 ILCS 5/505(a)(3.2) (West 2018).

¶ 30      Although the trial court should have imputed income to petitioner for the initial calculation, the record establishes the court's decision not to impute additional income to petitioner did not cause substantial prejudice to respondent. "Error is reversible only if it is 'substantially prejudicial.' " *McNeil v. Ketchens*, 2011 IL App (4th) 110253, ¶ 22, 964 N.E.2d 66 (quoting *Wodziak v. Kash*, 278 Ill. App. 3d 901, 914, 663 N.E.2d 138, 147 (1996)). Here, the trial court's determination of respondent's child-support obligation was based on a deviation from the statutory guidelines under section 505(a)(3.4) of the Dissolution Act (750 ILCS 5/505(a)(3.4) (West 2018)).

¶ 31      The court's determination did not start from the $3050 figure, which was affected by the court's decision not to impute income to petitioner, except to find the amount too low to support the children's standard of living during the marriage. The court then arrived at the $4700 figure by pointing to petitioner's "Child Support Budget," which demonstrated the family's monthly expenses were $4720 and petitioner, while receiving $5275 per month, was able to save $550 each month. Because the court's analysis reveals the statutory guideline did not affect the amount of the child-support award, no prejudice occurred when the court did not impute a salary

to petitioner to decrease the amount of the statutory guideline—a guideline the court found inappropriate to follow.

¶ 32                           B. Deviation From the Statutory Guidelines

¶ 33          Respondent next argues the trial court erred in deviating upward from the statutory guidelines, as petitioner was plainly seeking a way to replace the maintenance she forfeited during the dissolution of their marriage to provide financially for not only the parties' children but also herself, her new husband, and his children. Respondent contends, simply because he is a high earner, he should not be required to support plaintiff's new family and business. Respondent further points to the trial court's conclusion petitioner was receiving a windfall when he was paying $5275 for three minor children and questions how $4700 for two children was any less of a windfall.

¶ 34          The determination of a child support obligation is a matter within the sound discretion of the trial court. *Vance v. Joyner*, 2019 IL App (4th) 190136, ¶ 66. This court will not overturn a child-support determination absent an abuse of discretion. *In re Marriage of Berberet*, 2012 IL App (4th) 110749, ¶ 37, 974 N.E.2d 417. An abuse of discretion will be found if we conclude no reasonable person would take the same view as the trial court. *Vance*, 2019 IL App (4th) 190136, ¶ 66.

¶ 35          Under the Dissolution Act, "the child[-]support guidelines shall be used as a rebuttable presumption for the establishment or modification of the amount of child support." 750 ILCS 5/505(a)(3.4) (West 2018). A trial court may deviate from the guidelines if it would be inequitable, unjust, or inappropriate to apply those guidelines. 750 ILCS 5/505(a)(3.4) (West 2018). If it finds deviation appropriate, equitable, or just, the court must make written findings,

setting forth "the reasons for the deviation and the presumed amount under the child[-]support guidelines without a deviation." 750 ILCS 5/505(a)(3.4) (West 2018). While the statute provides examples of reasons the court may deviate from the child-support guidelines, it expressly allows the court to consider "any other factor the court determines should be applied upon a finding that the application of the child[-]support guidelines would be inappropriate, after considering the best interest of the child." 750 ILCS 5/505(a)(3.4)(C) (West 2018).

¶ 36     Respondent finds fault in the trial court's reliance on his income and ability to pay as a reason to deviate upwardly from the guidelines. We disagree. Section 505(a)(3.4)(C) grants the trial court discretion to consider "any other factor the court determines should be applied." 750 ILCS 5/505(a)(3.4)(C) (West 2018). Earlier in the same section of the Dissolution Act, the legislature deemed considerations of the parents' needs and resources as well as the child's standard of living had the marriage remained intact appropriate considerations in whether the statutory guidelines were appropriate as a child-support award. See 750 ILCS 5/505(a)(2) (West 2018). It would be an odd result to find a child's standard of living and a parent's financial resources applicable to determine whether the statutory guidelines provided an appropriate amount of child support under section 505(a)(2), but not allow that same consideration to affect the determination of the amount of the obligation under section 505(a)(3.4).

¶ 37     We find it not an abuse of discretion to deviate upwardly to award a monthly child-support obligation of $4700. The evidence shows the children enjoyed a very comfortable lifestyle when the parties were married. They went on vacations. The children's activities were not limited by financial concerns. One parent was home with the children when they were not in school. When the parties initially divorced, child-support was set at $6000 per month and 40% of

respondent's income from bonuses. In addition to those contributions, due to petitioner's having purchased a home, there was no mortgage expense, other than the home-equity loan for which Wellness Data Solutions was responsible. The standard of living the children enjoyed during the marriage continued after the divorce. In 2018, with three minor children, respondent's child-support obligation was over $99,000. The children thus continued to enjoy a very comfortable standard of living. Given the petitioner's testimony, the statutory guideline setting the child-support obligation at $3050 would not have allowed the standard of living to continue. Petitioner established the child-support budget met the family expenses of $4720. Given the evidence presented by petitioner showing the children's standard of living could continue undisturbed with $4720 and respondent had the resources to maintain their lifestyle without affecting his own, we cannot find no reasonable person would agree with the court's child-support determination.

¶ 38　　　　　We disagree with respondent's misrepresentations regarding the windfall the trial court found. In his appellant brief, respondent summarizes the court's "windfall" finding as based solely on the $5275 monthly payment. This is not what the court found. The record establishes the windfall resulted not only from the surplus of the monthly child-support obligation amount ($5275) over the necessary family expenses ($4720), but also from the amount of the bonuses respondent received. In its order, the court found, because the family expenses were $4720 and the monthly support payment allowed petitioner to save $550, petitioner was receiving a windfall *and* a percentage of respondent's bonuses was not necessary to provide for the children. Thus, the "windfall" reference included the $550 petitioner budgeted for savings as well as the over $36,000 received as a percentage of each bonus respondent received in 2018. (We note the court's award removes the windfall created by the statutory

- 18 -

provisions in effect at the time of the earlier modification, which set the minimum child-support obligation for respondent at 32% of his income. See 750 ILCS 5/505(a)(1) (West 2014).) Thus, respondent's argument the award is an abuse of discretion because the trial court found petitioner was receiving a windfall when he was paying $5275, which equates to $1758 per child, it follows she was receiving a greater windfall with $4700, or $2350 per child, is misleading. When considering the bonuses received, the monthly amount paid for each minor child in 2018 is almost $1000 greater than the figure represented by respondent, or $2750. The amount per minor child after the modification is $2350.

¶ 39                      C. Respondent's Request to Apply Modification Retroactively

¶ 40          Respondent last argues the trial court abused its discretion in not applying the child-support modification retroactively. Respondent points to the evidence showing petitioner "got around the problem of not receiving maintenance" and "amassed nearly $30,000 in savings." Respondent concludes an abuse of discretion occurred when the trial court "reward[ed] [petitioner] with the surplus of support when she so clearly admits and flaunts the fact that she has been using a windfall of child support as *de facto* maintenance to support herself and her new husband and their ambitions."

¶ 41          The Dissolution Act affords trial courts great discretion in the decision whether to apply a child-support obligation retroactively to the date the petition was filed: "Except as otherwise provided ***, the provisions of any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification." 750 ILCS 5/510(a) (West 2018). Other than the limitation that modifications may not be applied retroactively to a time before notice of the filing of a

motion to modify, there are no express restrictions on the trial court's discretion. See 750 ILCS 5/510(a) (West 2018).

¶ 42    We are not convinced the trial court abused its discretion. Below, the court concluded the children's standard of living would be negatively affected if the modification was made retroactive and the respondent had approximately $12,000 per month after meeting his own financial obligations. On appeal of this conclusion, respondent points only to petitioner's savings account and continues to focus on petitioner's decision to develop a business while primarily working from home, rather than seek employment outside of the home. These arguments do not establish no reasonable person would take the same view as the trial court. See *Vance*, 2019 IL App (4th) 190136, ¶ 66.

¶ 43    We note in our initial order, the preceding paragraph indicated respondent had over $12,000 remaining each month *after* he made the child-support payments. In his petition for rehearing, respondent argues this court misstated the amount. According to respondent, the $12,000 figure mentioned in the trial court's order is the amount respondent had available to him *before* the child-support obligation was satisfied. The record shows, at the hearing on the petition to modify, petitioner testified respondent had over $12,000 per month *after* making child-support payments. Petitioner, in her appellee brief, cited the above testimony and repeated the same. Respondent, however, in neither his opening brief nor in his reply brief, contradicted petitioner's assertion. After our order was issued, respondent cited his financial affidavit in the petition for rehearing. The financial affidavit shows the $12,000 figure does not include the child-support expense. Even if this figure is correct, whether respondent had $12,000 or $7000 in disposable income after meeting his child-support obligation, our analysis and conclusion remain the same.

- 20 -

The trial court did not abuse its discretion in setting maintenance and ruling the modification should not apply retroactively.

¶ 44                                D. Petitioner's Motion to Strike

¶ 45            In the proceedings before this court, petitioner filed a motion to strike the portion of respondent's brief in which respondent cites an unpublished decision, *In re Marriage of Doran*, 2019 IL App (1st) 180904-U, ¶ 29. *Doran* was improperly cited by respondent. However, the use of *Doran* by respondent was limited to only repeating the language appearing in the statute itself. We deny petitioner's motion to strike and clarify we did not review or consider *Doran* for purposes of this appeal.

¶ 46                                III. CONCLUSION

¶ 47            We affirm the trial court's judgment.

¶ 48            Affirmed.